Argued and submitted October 11, 2006, affirmed December 12, 2007

SERVICES EMPLOYEES INTERNATIONAL
and Tamara McWilliams,
*Plaintiffs,*

*and*

Grant WALTER,
Mason Young,
and all others similarly situated,
*Plaintiffs-Appellants,*

*v.*

PORTLAND HABILITATION CENTER, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
030404116; A129008

173 P3d 1268

Charles R. Williamson argued the cause for appellants.
With him on the briefs was Kell, Alterman & Runstein, LLP.

Bradley F. Tellam argued the cause for respondent. With him on the brief were Richard N. VanCleave, and Barran Liebman LLP.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.*

ARMSTRONG, P. J.

* Rosenblum, J., *vice* Richardson, S. J.

## ARMSTRONG, P. J.

In this class action, plaintiffs, former Portland Public School District custodians, appeal from a limited judgment dismissing their claim against defendant for intentional interference with economic relations. Plaintiffs assign error to the trial court's grant of summary judgment for defendant, contending that genuine issues of material fact exist and that defendant was not entitled to judgment as a matter of law. We affirm.

We review the record and all reasonable factual inferences that may be drawn from it in the light most favorable to plaintiffs, the parties opposing summary judgment.[1] ORCP 47 C; *Jones v. GMC*, 325 Or 404, 408, 939 P2d 608 (1997). Plaintiffs, members of the Services Employees International Union Local 140 (Local 140), were custodial employees of Portland Public School District No. 1J (the district) covered by a collective bargaining agreement between the district and Local 140.[2] In February 2002, due to budgetary constraints, the district told Local 140 that the district intended to reduce its annual custodial budget by $4.5 million in 2002 and $5.3 million in 2003 and, if necessary, to subcontract out all custodial services being performed by its custodial employees to achieve those savings. The district said that it was willing to bargain with Local 140 over that proposal. The district maintained at all times during its negotiations with Local 140 that a reduction of roughly $5 million per year in the cost of custodial services was a required outcome of the bargaining.

Over the course of the next five months, Local 140 made several proposals to the district for moderate savings in the cost of custodial services, and each offer was rejected by the district because the offers did not come close to meeting

---

[1] On appeal, plaintiffs provided us with copies of pertinent materials from their response to defendant's summary judgment motion. We are unable to locate the originals of those documents in the trial court record. However, defendant has not raised an issue about plaintiffs' submission. Even considering those materials, plaintiffs' evidence is insufficient to establish that there was a triable issue of fact on plaintiffs' claim.

[2] Local 140 is not a party to this action; it was dismissed as a plaintiff in April 2004.

its specified savings. The closest offer made by Local 140 fell $2.4 million short of the specified savings for 2002-03 and $2.5 million short for 2003-04. Counteroffers by the district were also rejected by Local 140.

While negotiating with Local 140, the district began researching its options to contract out the custodial work. In April 2002, the district issued a request for proposals from Qualified Rehabilitation Facilities (QRF) for custodial services. A QRF is a nonprofit corporation that employs severely disabled people to perform at least 75 percent of the direct labor hours expended by the corporation's employees. ORS 279.835(5). Under the Oregon Products of Disabled Individuals Law (PDIL), contracts between public agencies and QRFs need not be based on competitive bids or proposals but, rather, can be entered at prices established by the Oregon Department of Administrative Services. *Former* ORS 279.015(b) (2003), *repealed by* Or Laws 2003, ch 794, § 332; ORS 279.850.

In response to the request for proposals, at least two QRFs, Tualatin Valley Workshop and defendant, submitted proposals to the district. Defendant was identified by the district as the top-rated contractor of those that submitted proposals. The district began negotiating with defendant for custodial services, and the district and defendant reached an agreement on a proposed contract at the end of May 2002. The proposed agreement between the district and defendant was subject to the approval of the Portland Public School Board (board), and the district took defendant's proposal to the board's July 8, 2002, meeting for a vote. During this time, the district continued to negotiate with Local 140.

At the July 8, 2002, board meeting, the board rejected the final Local 140 contract offer and voted to enter into a contract with defendant for custodial services. After the board meeting, the district made a final effort to negotiate a contract with Local 140 before signing the contract with defendant. The district contacted Local 140 and gave it a deadline of noon on July 12 to submit an acceptable proposal to the district with the requisite cost savings. Local 140 did not meet the deadline, and the district thereafter signed a

one-year contract with defendant for custodial services. Subsequently, plaintiffs were laid off by the district.

Plaintiffs brought a class action against defendant for intentional interference with economic relations, alleging that defendant interfered with plaintiffs' employment relationship with the district by misrepresenting to the district its status as a QRF under the PDIL. According to plaintiffs, those misrepresentations improperly led the district to enter a contract for custodial services with defendant and thereby caused the district to terminate plaintiffs' employment with the district. Defendant moved for summary judgment on plaintiffs' claim, contending (1) that there was no evidence on which to find that it had misrepresented its status as a QRF and, (2) that, even if there were such evidence, there was no evidence on which to find that defendant's actions had caused the district to terminate its relationship with Local 140, and, thereby, to terminate plaintiffs' employment. The trial court granted defendant's motion on the second of the two grounds, concluding "that PHC's representations, improper or not, did not affect the board's decision to terminate the plaintiffs' employment."

On appeal, plaintiffs argue that the trial court erred because, in their view, a reasonable jury could find on the evidence in the summary judgment record that defendant's actions caused plaintiffs to lose their jobs. Defendant rejects that argument and also argues that it was entitled to summary judgment on the alternative ground raised below that there is no evidence to support a finding that it misrepresented its QRF status.

■     The tort of intentional interference with economic relations has six elements that a plaintiff must prove to be entitled to judgment: (1) the existence of a business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished by improper means or for an improper purpose; (5) a causal effect between the interference and the damage to the economic relationship; and (6) actual damages. *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). In this case, only two elements are in dispute: whether defendant employed improper means, namely, misrepresenting its status as a QRF and its ability to

perform its custodial contract with the district while maintaining its QRF status; and whether defendant's actions in negotiating with the district for custodial services caused the district to terminate its relationship with plaintiffs.

■ We need not address whether defendant misrepresented its QRF status because, viewing the record in plaintiffs' favor, we conclude that no objectively reasonable juror could find that defendant's actions caused the district to terminate its relationship with plaintiffs.

In plaintiffs' view, a jury could find on this record that, but for defendant's improper conduct, which led the district to enter a contract with defendant for custodial services, the district and Local 140 would have entered a new collective bargaining agreement under which plaintiffs would have continued to be employed as custodians for the district. The district unquestionably needed someone to provide custodial services for its facilities. Nevertheless, on this record, the plaintiffs' theory would require a jury to speculate that, had the district not entered a contract with defendant, it would have continued to employ plaintiffs as custodians under an agreement with Local 140.

The district and Local 140 bargained to impasse over a five-month period over the district's effort to reduce its custodial budget by roughly $5 million a year. No contractual offer by Local 140 during that time came close to achieving the reduction that the district sought. Furthermore, there is no testimony or other evidence in the record about what the district would have done to obtain custodial services had it not entered the contract that it did with defendant. In the absence of such evidence, we believe that a jury would have to speculate to find that the district would have negotiated a contract with Local 140 for custodial services and, further, would have to speculate about the terms of that contract. Because speculation is not a proper basis for a jury to find facts, the evidence in the record is insufficient to show that there is a triable issue of fact about whether defendant's actions in pursuing and entering a contract for custodial services with the district caused plaintiffs to lose their employment as custodians with the district.

In sum, the record contains no evidence to demonstrate that defendant's representations—even if improper—caused the district not to renew its contract with Local 140. The gap between what the district did and what it would have done in the absence of defendant's actions is too great to fill except by speculation, and therefore, no objectively reasonable juror could find that defendant's conduct in negotiations with the district caused plaintiffs to be laid off from their jobs. It follows that there is no genuine issue of material fact on plaintiffs' claim against defendant, and defendant was entitled to judgment as a matter of law. The trial court did not err in granting defendant's summary judgment motion.

Affirmed.